MARC J. RACHMAN (admitted *pro hac vice*) (mrachman@dglaw.com)
SHIRIN KEEN (pending admission *pro hac vice*) (skeen@dglaw.com)
DAVIS & GILBERT LLP
1740 Broadway
New York, NY  100219
Telephone:     (212) 468-4800
Facsimile:      (212) 468-4888

CHRISTOPHER T. HOLLAND (SBN 164053) (cholland@kksrr.com)
TRACY M. CLEMENTS (SBN 184150) (tclements@kksrr.com)
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
555 Montgomery Street, 17th Floor
San Francisco, CA  94111
Telephone:     (415) 249-8330
Facsimile:      (415) 249-8333

Attorneys for Defendant and Counterclaim Plaintiff
NETDEVIL LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CODEMASTERS SOFTWARE COMPANY LIMITED, a United Kingdom corporation,<br><br>Plaintiff,<br><br>v.<br><br>GAZILLION, INC., a Delaware corporation, NETDEVIL LIMITED, a Colorado corporation,<br><br>Defendants. | Case No.:  CV 10 5429 (EMC)<br><br>**NETDEVIL LTD.'S ANSWER AND COUNTERCLAIMS** |

Defendant NETDEVIL LTD. ("NetDevil" or "Defendant"), by its undersigned attorneys, answers the Complaint ("Complaint") filed by Plaintiff The Codemasters Software Company Limited ("Codemasters" or "Plaintiff") as follows:

## AS TO JURISDICTION AND VENUE

1. Admits that Plaintiff purports to invoke the jurisdiction of the Court as set forth in paragraph 1, but denies that Plaintiff has a basis for the relief it seeks.

2. Admits that Plaintiff purports to assert that venue is proper in this judicial district for the reasons set forth in paragraph 2, but denies that Plaintiff has a basis for the relief it seeks.

## AS TO THE PARTIES

3. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3.

4. Denies the allegations set forth in paragraph 4, except admits that Gazillion is a Delaware corporation, with its headquarters and principal place of business in San Mateo, California and that NetDevil is a wholly owned subsidiary of Gazillion.

5. Denies the allegations set forth in paragraph 5, except admits that NetDevil is a Colorado corporation and that it developed the game "Jumpgate."

6. Denies the allegations set forth in paragraph 6, except admits that Gazillion is registered to do business in, and conducts business in, California, and that NetDevil operates Jumpgate.

## AS TO THE ALLEGED CLAIMS
### (Claim for Breach of Contract)

7. Denies the allegations set forth in paragraph 7, and respectfully refers the Court to the referenced agreement and amendments for true and complete statements, or fair and accurate representations, of their contents.

8. Denies the allegations set forth in paragraph 8, and respectfully refers the Court to the referenced agreement and amendments for true and complete statements, or fair and accurate representations, of their contents.

9. Denies the allegations set forth in paragraph 9, except admits that NetDevil is wholly owned by Gazillion.

10. Denies the allegations set forth in paragraph 10.

11. Denies the allegations set forth in paragraph 11, and respectfully refers the Court to the referenced agreement and amendments for true and complete statements, or fair and accurate representations, of their contents.

12. Denies the allegations set forth in paragraph 12.

13. Denies the allegations set forth in paragraph 13, and respectfully refers the Court to the referenced agreement for true and complete statements, or fair and accurate representations, of their contents.

14. Denies the allegations set forth in paragraph 14.

15. Denies the allegations set forth in paragraph 15.

16. Denies the allegations set forth in paragraph 16.

17. Denies the allegations set forth in paragraph 17 and each of its subparts.

18. Denies the allegations set forth in paragraph 18.

**(Claim for Rescission)**

19. In response to paragraph 19, NetDevil repeats and realleges its responses to paragraphs 1 through 18 of the Complaint as if each were fully set forth herein.

20. Denies the allegations set forth in paragraph 20.

21. Denies the allegations set forth in paragraph 21.

22. Denies the allegations set forth in paragraph 22, except admits that Plaintiff purports to proceed as stated.

23. Denies the allegations set forth in paragraph 23, except admits that Plaintiff purports to proceed as stated.

**AFFIRMATIVE DEFENSES**

As separate and additional defenses, NetDevil alleges as follows, without admission that it carries the burden of proof or persuasion on any of the defenses set forth below:

/ / /

**FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state a cause of action upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, by Plaintiff's breaches of the Agreement.

**THIRD AFFIRMATIVE DEFENSE**

While denying all allegations of wrongdoing, fault and/or liability, NetDevil states that any damages awarded to Plaintiff should be set off against the damages incurred by NetDevil as a result of Plaintiff's wrongful conduct as set forth in the Counterclaims.

**FOURTH AFFIRMATIVE DEFENSE**

Any damages alleged to have been incurred by Plaintiff were the result, in whole or in part, of Plaintiff's own actions or inactions, or of the actions of third parties, and not as a result of any conduct on the part of NetDevil.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrines of modification, waiver and/or estoppel.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrine of acquiescence.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

NetDevil reserves the right to amend this Answer to raise and rely upon any additional defenses that become available or apparent during discovery.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant NetDevil respectfully requests and prays as follows:

1. That Plaintiff take nothing by the Complaint;
2. That this action be dismissed with prejudice against Plaintiff;

3. That NetDevil recover its costs of suit, including reasonable attorneys' fees, as appropriate.

4. For such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS

NetDevil asserts these counterclaims for Codemasters' breach of contract and a declaration that the agreement between NetDevil and Codemasters was terminated.

## PARTIES

1. NetDevil is a Colorado corporation with its principal place of business in Colorado. NetDevil is a game development company dedicated to the construction of massively multiplayer games. NetDevil's first title, Jumpgate, was a ground-breaking massively multiplayer online game.

2. Codemasters is, upon information and belief, a corporation organized under the laws of the United Kingdom. Upon information and belief, Codemasters is doing and transacting business within the State of California and this judicial district, and has availed itself of the jurisdiction of this Court.

## JURISDICTION & VENUE

3. This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367, since the claims herein are so related to the claims raised by Plaintiff as to form part of the same case or controversy.

4. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(a)&(c).

## INTRADISTRICT ASSIGNMENT

5. Intradistrict assignment to the San Francisco Division is appropriate per Civil Local Rule 3-2(c), because a substantial part of events which give rise to the claims alleged in these counterclaims occurred in San Mateo County.

/ / /

/ / /

/ / /

## FACTUAL BACKGROUND FOR COUNTERCLAIMS

**Agreement between NetDevil and Codemasters**

6. On or about January 16, 2008, NetDevil and Codemasters entered into a Letter of Intent ("LOI") pursuant to which NetDevil was responsible for developing the massively multiplayer online game "Jumpgate: Evolution" (the "Game") and Codemasters licensed the rights, among others, to operate, distribute, and market the Game in certain territories and by certain means. NetDevil began working on the development of the Game pursuant to the LOI in early 2008.

7. On or about June 9, 2008, NetDevil and Codemasters entered into a written licensing agreement (the Original Agreement) with respect to the Game.

8. Under the Original Agreement, Codemasters agreed to pay NetDevil a total of $2 million in non-returnable Advances for the development of the Game, only recoupable against future royalties. In particular, the parties agreed to a Payment Schedule pursuant to which, upon delivery by NetDevil and acceptance by Codemasters of particular deliverables at set deadlines (the "Milestones"), Codemasters would pay a specified portion of the Advance ("Milestone Payment").

9. The parties entered into three written addendums to the Agreement, executed by Codemasters on July 29, 2008 (Addendum), August 17, 2008 (Addendum No. 2) and February 11, 2009 (Addendum No. 3), respectively. The Original Agreement, along with all the Addendums, is referred to as the "Agreement".

**Codemasters' Failure to Pay NetDevil for Milestone 7**

10. NetDevil delivered Milestone 7 on or about March 24, 2009, and Codemasters accepted it. NetDevil invoiced Codemasters for the $200,000 advance due for Milestone 7 on the same date. On April 9, 2009, NetDevil notified Codemasters that payment for Milestone 7 was due and owing. Codemasters acknowledged in writing that payment was due on April 24th, thirty days after the receipt of NetDevil's invoice. On April 28, 2009, NetDevil again notified Codemasters that payment for Milestone 7 was overdue.

11. On April 30, 2009, Codemasters, through counsel, sent a letter to NetDevil's counsel.  The letter asserted that NetDevil was supposed to have delivered the Game in time for the Release Date of February 24, 2009, and that it was unlikely that the Game would be ready for release by the end of September 2009 (a delay of seven months from the Release Date). Codemasters stated it was unwilling to pay any further Royalty Advances until it received written confirmation of a new Release Date whereupon it would properly calculate the amount of Advances, if any, which would be due.  The letter did not state that NetDevil was in breach of the Agreement or ask NetDevil to cure any purported breaches.

**Consequences of Codemasters' Breach and Extension of Remaining Milestones**

12. Prior to the April 30, 2009 letter, the parties had extended the remaining Milestone Dates, including the Release Date, by their course of conduct.

13. Pursuant to Paragraph 4 (c) of the Agreement, Codemasters was required to make payment for Milestone 7 because it was submitted by NetDevil, actually received by Codemasters and approved in writing by it.  As acknowledged by Codemasters, such payment was to be made within thirty days of Codemasters' written approval and receipt of NetDevil's valid written invoice.

14. To date, Codemasters has failed and refused to pay the Milestone 7 payment.

15. Codemasters' failure to make the Milestone Payment for Milestone 7 is without excuse and in breach of the Agreement.

16. Pursuant to Paragraph 4 (c) of the Agreement, NetDevil is entitled to interest at the rate of 5% per annum from the last date that the payment was due until the payment has been made.

17. Pursuant to Paragraph 13(e) of the Agreement, NetDevil can pursue an action for damages for Codemasters' failure to make a Milestone Payment.

18. Pursuant to Paragraph 14 (b)(ii) of the Agreement, NetDevil is entitled all costs incurred, including legal fees and expenses, in connection with any action to enforce the Agreement.

19. Pursuant to Paragraph 4(c) of the Agreement, Codemasters' failure to make the Milestone Payment for Miletone 7 extended the delivery date for the next subsequent Milestone for the Game (including the Release Date for the Game) by the number of days that Codemasters is late in making such Milestone Payment, which it still has not made.

**Codemasters' Insolvency and Termination of the Agreement**

20. On April 8, 2010, Codemasters sent a notice to cure pursuant to Paragraph 13(e)(i) and (ii) of the Agreement, asserting that NetDevil was late in delivering the software such that the Game could be released on February 24, 2009, according to the Milestone Schedule in the Agreement, and that NetDevil was required to cure by providing the software such that the Game could be released no later than thirty days following the date of the letter (*i.e.*, by May 8, 2010). Codemasters stated that if NetDevil failed to comply, then pursuant to Paragraph 13(e)(ii), Codemasters shall "have the right to terminate the Agreement".

21. NetDevil thereupon learned that certain creditors filed an involuntary bankruptcy petition against Codemasters in the United Kingdom and that Codemasters had undergone a restructuring.

22. Pursuant to Paragraph 14(e) of the Agreement, in that event, NetDevil was entitled to immediately terminate the Agreement upon written notice to Codemasters. Therefore, on May 6, 2010, prior to the expiration of the cure period in Codemasters April 8, 2010 letter, NetDevil sent a letter to Codemasters terminating the Agreement effective immediately.

23. NetDevil validly terminated the Agreement on May 6, 2010. Thereafter, NetDevil had no further obligations to Codemasters with respect to the Game, and any and all interest or rights Codemasters had in the Game, or to the Advance, terminated.

**FIRST COUNTERCLAIM**
**(Breach of Contract)**

24. NetDevil realleges and incorporates by reference paragraphs 1 through 23 of its Counterclaims above as if set forth fully herein.

7
NETDEVIL LTD.'S ANSWER AND COUNTERCLAIMS
CASE NO. CV 10 5429 (EMC)

25. The Agreement constituted a valid and binding agreement between NetDevil and Codemasters.

26. NetDevil fully performed all of its obligations under the Agreement.

27. Codemasters breached the Agreement by its failure to pay the Milestone Payment for Milestone 7.

28. As a result of Codemasters' breach of the Agreement, NetDevil has been damaged in the amount to be determined at trial, but in no event less than $200,000, plus interest at the rate of 5% per annum from April 24, 2009, statutory interest, and costs and attorneys' fees in an amount to be determined at trial.

**SECOND COUNTERCLAIM**
**(Declaratory Judgment)**

29. NetDevil realleges and incorporates by reference paragraphs 1 through 28 of its Counterclaims above as if set forth fully herein.

30. The Agreement constituted a valid and binding agreement between NetDevil and Codemasters.

31. NetDevil fully performed all of its obligations under the Agreement.

32. NetDevil was entitled to terminate the Agreement immediately upon Codemasters' insolvency, pursuant to Paragraph 14(e) of the Agreement.

33. NetDevil seeks a judicial declaration that the Agreement was effectively terminated by NetDevil on May 6, 2010, and for a determination of the parties' rights and obligations following such termination.

**WHEREFORE,** Counterclaim Plaintiff NetDevil requests that judgment be entered against Plaintiff Codemasters as follows:

1. Awarding NetDevil, on the Counterclaims, damages of no less than $200,000, plus interest at the rate of 5% per month from the date of Codemasters' breach of the contract, as well as statutory interest;

2. Awarding NetDevil its costs, including attorneys' fees, incurred in prosecuting these counterclaims and defending this action;

3. A declaration that the Agreement was terminated as of May 6, 2010, and that NetDevil has no further obligations to Codemasters with respect to the Game; and

4. Granting such other and further relief as the Court deems just and proper.

Dated: January 24, 2011                KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP


                                       By:  /s/
                                            TRACY M. CLEMENTS
                                            Attorneys for Defendant/Counterclaim
                                            Plaintiff NetDevil Ltd.